UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


PATRICK JEROME BROMELL,

     Plaintiff,

        v.                                 No. 3:17-cv-824(WIG)

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

     Defendant.

_____X


**<u>RULING ON PENDING MOTIONS</u>**


     This is an administrative appeal following the denial of the plaintiff, Patrick Jerome

Bromell's, application for Title II disability insurance benefits ("DIB"). It is brought pursuant to

42 U.S.C. § 405(g).[1] Plaintiff now moves for an order reversing the decision of the

Commissioner of the Social Security Administration ("the Commissioner"), or in the alternative,

an order remanding his case for a rehearing. [Doc. # 19]. The Commissioner, in turn, has

---

[1] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. §§ 405(b)(1) and 1383(c)(1)(A). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. § 404.929. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. § 404.967. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g).

moved for an order affirming her decision. [Doc. # 21]. After careful consideration of the arguments raised by both sides, and thorough review of the administrative record, the matter is remanded for additional proceedings.

## **LEGAL STANDARD**

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to first ascertain whether the Commissioner applied the correct legal principles in reaching her conclusion, and then whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla or touch of proof here and there in the record." *Williams*, 859 F.2d at 258. If the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

## BACKGROUND

### a. Facts

Plaintiff filed an application for DIB on May 20, 2014, alleging a disability onset date of October 14, 2013.  His claim was denied at both the initial and reconsideration levels.  Thereafter, Plaintiff requested a hearing.  On December 21, 2015, a hearing was held before administrative law judge Eskunder Boyd ("the ALJ").  On January 25, 2016, the ALJ issued a decision denying Plaintiff's claim.  Plaintiff then sought review with the Appeals Council.  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  This action followed.

Plaintiff was fifty years old on the date of the hearing before the ALJ.  (R. 38).  He has a high school education.  (R. 39).  He last worked in January 2013 as a tractor trailer driver.  (R. 40).  He suffered a stroke in February, 2014, and experienced residual effects including weakness and numbness on the right side of the body, particularly in the right hand and arm, and some cognitive problems.  (T. 36).  Plaintiff is right handed.  (R. 39).

Plaintiff's complete medical history is set forth in the Statement of Facts filed by each side.  [Doc. # # 19-1, 21-2].  The Court adopts the facts as set forth collectively and incorporates these Statements by reference herein.

### b. The ALJ's Decision

The Commissioner must follow a sequential evaluation process for assessing disability claims.  The five steps of this process are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the

Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations (the Listings). If so, and it meets the durational requirements, the Commissioner will consider him or her disabled, without considering vocational factors such as age, education, and work experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform. 20 C.F.R. § 404.1520 (a)(4)(i)-(v). The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on the final step. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

In this case, the ALJ divided Plaintiff's claim into three different time periods: from the alleged onset date of October 14, 2013 through January 31, 2014; from February 1, 2014 through February 10, 2015; and from February 11, 2015 through the date of the hearing.

For the first time period, the ALJ found, at Step One, that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. (R. 15). At Step Two, the ALJ found that Plaintiff's cardiomyopathy[2] was a severe impairment. (R. 15). The ALJ found, at Step Three, that this impairment did not meet or equal the severity of one of the listed impairments. (R. 15-16). Next, the ALJ determined Plaintiff retained the following residual functional capacity[3] prior to February 1, 2014:

---

[2] Cardiomyopathy is a structural or functional disease of heart muscle. *See* https://www.merriam-webster.com/dictionary/cardiomyopathy.
[3] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his or her limitations. 20 C.F.R. § 404.1545(a)(1).

> Plaintiff could perform light work except he could never climb ladders, ropes, or scaffolds; occasionally climb stairs or ramps; occasionally balance; occasionally stoop or crouch; never kneel or crawl; occasionally reach overhead; frequently handle or finger with the right hand but no limits with the left hand; and no exposure to extreme cold in the work environment. He could perform simple, routine, repetitive tasks; sustain concentration, persistence, and pace for two-hour segments; and could interact with others with no problem.

(R. 16). At Step Four, the ALJ found Plaintiff had been unable to perform any past relevant work since the alleged onset date. (R. 20). Finally, at Step Five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that there were jobs existing in significant numbers in the national economy Plaintiff could perform. (R. 21). Specifically, the VE testified that Plaintiff could perform the positions of machine tender, quality control, and office cleaner. (R. 22). Accordingly, the ALJ found Plaintiff was not disabled prior to February 1, 2014.

For the second time period, February 1, 2014 through February 10, 2015, at Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. (R. 15). At Step Two, the ALJ found that Plaintiff's severe impairments included cardiomyopathy and status-post cerebral vascular accident[4]. (R. 15). The ALJ found, at Step Three, that these impairments did not meet or equal the severity of one of the listed impairments. (R. 15-16). Next, the ALJ determined Plaintiff retained the following residual functional capacity for the period of February 1, 2014 through February 10, 2015:

> Plaintiff could perform sedentary work except he must have a sit/stand option in that he can sit for one hour, alternate to standing position for five minutes, then resume sitting; he can never climb ladders, ropes, or scaffolds; occasionally climb stairs or ramps; occasionally balance; occasionally stoop or crouch; never kneel or crawl; occasionally reach overhead; occasionally handle or finger with the right hand but no limits with the left hand; and no exposure to extreme cold in the work environment. He could perform simple, routine, repetitive tasks; he could sustain concentration, persistence, and pace for two-hour segments; and he could interact with others with no problem.

---

[4] A cerebrovascular accident is also referred to as a stroke. *See* https://www.merriam-webster.com/dictionary/cerebrovascular%20accident#medicalDictionary.

(R. 18-19). At Step Four, the ALJ found Plaintiff had been unable to perform any past relevant work since the alleged onset date. (R. 20). Finally, at Step Five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that there were no jobs existing in significant numbers in the national economy Plaintiff could perform during the time period. (R. 22-23). Accordingly, the ALJ found Plaintiff *was* disabled during the period of February 1, 2014 through February 10, 2015. (R. 23).

For the third time period, beginning on February 11, 2015, the ALJ found, at Step One, that Plaintiff had not engaged in substantial gainful activity. (R. 15). At Step Two, the ALJ found that Plaintiff's cardiomyopathy was a severe impairment. (R. 23). The ALJ found that medical improvement occurred as of February 11, 2015, at which time Plaintiff's disability ended. (R. 24). The ALJ further determined that, beginning February 11, 2015, Plaintiff no longer had a severe impairment or combination of impairments, and that his functional capacity for basic work activities had increased. (R. 27). Accordingly, the ALJ concluded that Plaintiff's disability ended on February 11, 2015. (R. 27).

## DISCUSSION

When analyzing the time period of February 1, 2014 through February 10, 2015, the ALJ assigned great weight to the October 15, 2014 opinion of Dr. Shah, Plaintiff's primary care physician. (R. 20). Dr. Shah opined that Plaintiff could never lift and carry less than ten pounds in a competitive work situation; could rarely twist, stoop, or crouch; could occasionally climb stairs; and could never climb ladders. (R. 1559). She assessed significant limitations in reaching, handling, or fingering. (*Id.*). She opined that Plaintiff could use his right hand and fingers 10% of the time, could use his right arms to reach 20% of the time, and had no limitations in the left upper extremity. (*Id.*). Dr. Shah also opined that Plaintiff would be off-

task for 20% of the work day, meaning that his symptoms would be "severe enough to interfere with attention and concentration needed to perform even simple work tasks." (R. 1560). She stated he would miss about three days of work per month. (*Id.*). The ALJ, in giving this opinion great weight, found it was "consistent with the record of evidence as a whole." (R. 20).

The ALJ continued his analysis for the third time period, and determined that medical improvement occurred as of February 11, 2015. (R. 24). In support of this determination, the ALJ discussed occupational therapy records indicating gains Plaintiff made in his right upper extremity function and strength. (R. 25). The ALJ also discussed Plaintiff's cognitive deficits secondary to the stroke, highlighting neurologist reports showing mild cognitive impairment not at the level of dementia and mild memory symptoms that had not worsened since the stroke. (R. 26). The ALJ evaluated also opinion evidence from 2015.

What is problematic is that the ALJ did not discuss Dr. Shah's opinion when determining that Plaintiff's medical improvement related to the ability to work. While the portions of Dr. Shah's opinion pertaining to Plaintiff's upper right extremity were likely displaced by the more recent evidence from the occupational therapist documenting increased function, the ALJ did not discuss how the parts of Dr. Shah's opinion not pertaining to the right upper extremity would impact Plaintiff's ability to work. Specifically, the ALJ did not address Dr. Shah's opinion that Plaintiff would be off-task for 20% of the work day and miss work three times per month. While the ALJ does mention some neurological evidence, this evidence is not at all as conclusive in showing medical improvement as the occupational therapy records are. Yet, in an earlier part of his decision, the ALJ gives Dr. Shah's opinion great weight because it was consistent with the record evidence. The ALJ does not, however, explain what more recent evidence – if any – contradicts Dr. Shah's opinion about Plaintiff's limitations in all functional realms. Even

assuming that Plaintiff's right upper extremity had insignificant functional limitations as of February 11, 2015, the ALJ did not sufficiently explain how the aspects of Dr. Shah's opinion pertaining to Plaintiff's cognitive impairments were no longer supported by the medical evidence of record. Accordingly, the Court cannot say that substantial evidence supports the ALJ's decision.

Therefore, this matter must be remanded so that the ALJ can explain how Dr. Shah's opinion – to which he gives great weight – impacts the post- February 11, 2015 disability evaluation. In so doing, the ALJ may need to further develop the record. The ALJ should then continue through the evaluation process.

## Conclusion

For the reasons explained above, the Plaintiff's motion is granted and the Commissioner's motion is denied. This matter is remanded for additional proceedings consistent with this opinion. This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. § 636(c)(3); Fed.R.Civ.P. 73(c). The Clerk's Office is instructed that, if any party appeals to this court the decision made after this remand, any subsequent social security appeal is to be assigned to the District Judge or Magistrate Judge who issued the Ruling that remanded the case. The Clerk is directed to enter judgment in favor of the plaintiff and close this case.

SO ORDERED, this  20th  day of August, 2018, at Bridgeport, Connecticut.

_/s/ William I. Garfinkel_
WILLIAM I. GARFINKEL
United States Magistrate Judge